PRISCILLA R. OWEN, Circuit Judge,
concurring in part and dissenting in part;
I agree that Weeks Marine, Inc. (Weeks) was properly found liable by the district court for damages that Contango Operators, Inc. (Contango) suffered. However, I do not join in the disposition of the Government’s appeal. I disagree with the panel majority’s interpretation of the exculpatory clause in the permit that the United States issued to Contango under Section 10 of the Rivers, and Harbors Act of 1899, 33 U.S.C. § 403.
Section 10 of the Act prohibits the creation of any obstruction in the navigable waters of the United States unless the proposed project has been recommended by the chief of the Army Corps of Engineers (the Corps) and authorized by the Secretary of the Army. Contango desired to build a natural gas pipeline in the Gulf of Mexico that would cross the Atchafalaya Pass Channel, a shipping channel that leads from the Gulf of Mexico into the port of Morgan City, Louisiana. Contango applied for and the Government issued a permit allowing the construction of the pipeline.
There is an exculpatory clause in the permit which provides:
*291 3. Limits of Federal Liability. In issuing this permit, the Federal Government does not assume any liability for the following:
b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.
After the pipeline was constructed, the Corps undertook dredging operations in the Atchafalaya Pass Channel and awarded the dredging contract to Weeks. The plans and specifications prepared by. the Corps and provided to Weeks specified the location of five pipelines in the Channel but did not include Contango’s pipeline. Weeks’ dredge struck Contango’s pipeline, resulting in an explosion and fire. The pipeline was inoperable for 35 days. Con-tango sued Weeks and the Government for damages, contending that the Government was negligent in failing to identify the existence and location of Contango’s pipeline on the specifications provided to Weeks.
In holding that this incident did not come within the exculpatory clause in the permit issued by the Government to Con-tango, the district court placed great weight on the term “assume.” The version of the exculpatory language that had appeared in Section 10 permits prior to the version at issue in this suit had provided that “the United States shall in no case be liable for any damage or injury to the structure or work herein authorized.”[1] The district court concluded that “assume” means that the Government does not “take on liability” while the older language indicated that the Government “is not liable for [any] damages” and that the two concepts were distinct.
The panel majority opinion also places considerable weight on the term “assume,” concluding that the phrase “assume any liability” “refers only to taking on new liability.”[2] The majority opinion concludes that “the clause means that the permit or its issuance does not provide a basis for liability for the types of damages listed; it does not suggest the government is protected from existing sources of liability independent of the permit.”[3]
With great respect, I have difficulty following this explanation. The “types of damages listed” in the permit are quite broad. The damages identified are “[d]amages to the permitted project [Con-tango’s pipeline] or uses [of Contango’s pipeline] as a result of current or future activities undertaken by or on behalf of the United States in the public interest.” The reference to “current or future activities undertaken by or on behalf of the United States in the public interest” is also quite broad. That reference is not limited to activities that relate only to the permit.
Even giving the word “assume” a cramped meaning, the Government had no duty to Contango under admiralty law until the Government issued the permit to Contango allowing the pipeline to obstruct navigable waters. The exculpatory clause, fairly read in context, states that in exchange for allowing Contango to construct and operate a natural gas pipeline in navigable waters, the Government is not assuming, that is “taking on,” liability that it would not have had but for the issuance of the permit. In other words, since the only reason that the Government had any duty under admiralty law regarding the pipeline is because the pipeline is in navigable wa *292 ters, the exculpatory clause says that by allowing the pipeline to exist in navigable waters, the Government does not assume any liability for damages to the pipeline “as a result of current or future activities undertaken by or on behalf of the United States in the public interest.” This is an express disclaimer of liability for the Government’s own activities, both at the time the permit was issued and in the future that damage this pipeline.
The majority opinion relies on a decision of the Court of Federal Claims regarding the Section 10 exculpatory clause.[4] That was a takings case that is inapposite. In Banks v. United States, owners of property located on the shores of Lake Michigan contended that the Government’s activities in St. Joseph Harbor had resulted in erosion and that their properties were receding at a rate of two feet per year.[5] There were two components of the claims at issue. One was that the Government had installed steel sheet pilings at the St. Joseph Harbor, which the plaintiffs asserted “created a wall blocking the sand that otherwise would have traveled south and protected the shoreline [south of St. Joseph Harbor] from erosion.”[6] The second component was that in an attempt to mitigate the erosion, the plaintiffs had placed shore protection, called “revetments,” on their properties.[7] The Government contended that it was not liable for erosion that the revetments caused.[8] In order to construct the revetments, the plaintiffs had obtained permits under Section 10 of the River and Harbor Act of 1899.[9] A threshold issue in the case was whether the erosion caused by the revetments, as distinguished from erosion caused by the steel sheets installed in the harbor, constituted inverse condemnation and therefore constituted a taking rather than a tort.[10] The court held that if the facts alleged by the plaintiffs were proven at trial, the erosion caused by the revetments would be a taking rather than a tort.[11] In this context, the Government then argued that it was not liable for the erosion caused by the revetments because of the exculpatory clause in the Section 10 permits.[12] Unsurprisingly, the Court of Federal Claims concluded that the exculpatory clause was not applicable to a constitutional takings claim. The court said, “it is not legally relevant here whether [the Government] ‘assume[s]’ liability or not.”[13] This meant that the court did not even consider whether the Government assumed liability under the exculpatory clause, much less what liability the Government had assumed under that clause. Citing a takings case that held the Government is liable for the cost of protective measures taken by property owners to prevent erosion caused by the Government, the Court of Federal Claims said, “[u]nder Dickinson, [the Government] is liable for all that has been taken as a result of its activities; there is no liability for the government to ‘assume.’” [14] This *293 discussion does not support the panel majority’s interpretation of the exculpatory clause; it holds only that an exculpatory clause in a Section 10 permit does not apply when the Government has taken a private owner’s property for public use without compensation, in violation of the Constitution. The fact that the revetments that caused part of the erosion were authorized by a Section 10 permit had nothing to do with the fact that the initial erosion was caused by the Government and it would be liable for that erosion as well as the protective measures taken by the plaintiffs.
The present case is not a takings case. It is a tort case. The tort committed by the Government caused “[d]amages to the permitted project [Contango’s pipeline] ... as a result of current or future activities undertaken by or on behalf of the United States in the public interest.’’ The exculpatory clause applies.
For the foregoing reasons, I concur in part and dissent in part.
% }fc if: ^ i|t

. 33 C.F.R. § 209.130(c)(2)(vii) (1974).

. Ante at 286.

. Id.

. See id. at 286-87 n.13.

. 69 Fed.Cl. 206, 207-08, 214 (2006).

. Id. at 210 (alteration in original).

. Id. at 208.

. Id.

. Id. at 214.

. Id. at 212-14.

. Id. at 214.

. Id.

. Id. at 217 (second alteration in original).

. Id. (citing United States v. Dickinson, 331 U.S. 745, 750, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) (holding that when the Government takes property by flooding it, the Government is also liable for the cost of protective measures by landowners in preventing erosion caused by raised water levels)).